UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

JOHN LEE PERKINS,                              )
                                               )
        Plaintiff,                             )
v.                                             )        No. 7:23-CV-69-REW
                                               )
COMMISSIONER OF SOCIAL                         )        OPINION & ORDER
SECURITY ADMINISTRATION,                       )
                                               )
        Defendant.                             )

\*\*\* \*\*\* \*\*\* \*\*\*

On July 3, 2024, this Court denied Plaintiff John Lee Perkins's appeal and affirmed the Commissioner's denial of his application for social security benefits. *See Perkins v. Comm'r of Soc. Sec. Admin.*, 739 F. Supp. 3d 546, 564 (E.D. Ky. 2024). Perkins, a former client of disgraced Kentucky attorney Eric Conn, was first granted benefits by way of a fraudulent scheme concocted by Conn and others. *See id.* at 551. After the scheme was outed, the Commissioner redetermined, pursuant to 42 U.S.C. § 405(u), the benefits of each claim found to be touched by the fraud. *See id.* Perkins fell into that group, and his reconsideration led to a denial of his original application, which the Court affirmed after Perkins appealed to this Court. *See id.* at 564. Then, Perkins moved for reconsideration under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, asserting that the Court committed clear error in purportedly deferring to the Commissioner's interpretation of 42 U.S.C. § 405(u) and by failing to consider Perkins's post-determination evidence of his anxiety. *See* DE 23. The Commissioner responded, *see* DE 25, and Perkins replied, *see* DE 26. The Court did not clearly err on either front, so the Court similarly **DENIES** his reconsideration motion.

1

I.    **Standard**

A court may grant a Rule 59(e) "motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).  "A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault. Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).  Here, Perkins contends that the Court committed a clear error of law.  *See* DE 23 at 2.  A clear error is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).  Thus, for the Court to alter or amend its decision based on clear error, Perkins must establish "[a]n error that is plain and indisputable, and that amounts to complete disregard of the controlling law." *United States v. Thornton*, No. 5:17-CR-26-KKC, 2019 WL 956797, at *3 (E.D. Ky. Feb. 27, 2019) (evaluating a motion to reconsider under "same standards applicable to civil motions to alter or amend a judgment").  Stated differently, the error must be "so egregious that an appellate court could not affirm the district court's judgment." *United States v. Combs*, No. 6:09-CV-7069-DCR, 2012 WL 4460745, at *1 (E.D. Ky. Sept. 26, 2012).

Rule 60 requires a similar, if slightly more onerous, showing.  It provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).  Relief under this Rule is appropriate in two instances: "(1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000).  Therefore, a "claim of legal error in the underlying judgment falls within the definition of

2

mistake under Rule 60(b)(1)." *United States v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002) (citing *Pierce v. United Mine Workers of Am., Welfare & Ret. Fund for 1950 & 1974*, 770 F.2d 449, 451 (6th Cir. 1985)).  However, Rule 60(b) does not afford litigants a second chance to convince the court to rule in their favor by presenting new explanation, new legal theories, or proof.  *See Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001) (citing *Couch v. Travelers Ins. Co.*, 551 F.2d 958, 959 (5th Cir. 1977)).

Perkins does not specify which of the two rules he proceeds under, indiscriminately citing both and alleging error in the Court's analysis.  *See* DE 23 at 1.  When facing that ambiguity, courts normally look to the timing of the motion to gauge the governing standard.  If the movant files the motion within 28 days of the court's dismissal order, as required by Rule 59(e), then courts typically consider the motion under that standard.  *See Walker v. Comm'r of Soc. Sec.*, No. 3:22-CV-539-BJB, 2024 WL 25084, at *1 (W.D. Ky. Jan. 2, 2024) (citing *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 420–21 (D.D.C. 2005)); *cf. Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998) ("Where a party's Rule 59 motion is not filed within the mandatory [28]–day period, it is appropriate for a court to consider the motion as a motion pursuant to Rule 60 for relief from judgment.").  Perkins filed his reconsideration motion on the 28th day after the Court's order dismissing his social security appeal.  *See* DE 21; 23.  Thus, in line with the cases, the Court will analyze his motion under the 59(e) regime.

## II.    Analysis

Perkins alleges that the Court clearly erred in two respects: by (1) purportedly applying *Chevron* deference post-*Loper Bright*, and (2) failing to consider Perkins's 2016 evidence of treatment for anxiety.  *See* DE 23.  Neither amounts to clear error.

3

### a.  Interpretation of § 405(u)

Perkins first argues that the Court erred by applying *Chevron* deference to the Commissioner's interpretation of 42 U.S.C. § 405(u), in light of the Supreme Court's interim holding in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

At Perkins's redetermination hearing, the ALJ considered evidence that was "new, material, and related to the period at issue." R. at 448.  The ALJ determined the period at issue, in line with § 405(u) and Social Security Ruling 22-1p, to be the period between Perkins's initial application on September 30, 2005, and the Commissioner's favorable decision on July 6, 2007. *See* R. at 436.  That period dictated what evidence the ALJ considered in the redetermination analysis because the ALJ cannot "develop evidence about new medical conditions or impairments arising after the date of the original favorable determination or decision[,]" *see* Soc. Sec. R. 22-1p, 2022 WL 2533116, at *6 [hereinafter SSR 22-1p], and may only consider evidence post-dating the original determination "if that evidence relates to the period at issue in the redetermination." *Id.*  As a result, the ALJ omitted evidence of Perkins's anxiety from the redetermination analysis because Perkins did not "point to *any* documents in the record that supported that he had anxiety during the relevant period." *Perkins*, 739 F. Supp. 3d at 555 (emphasis in original).

Perkins now urges a contrary reading to § 405(u), arguing that the Court's supposed deference to SSR 22-1p, which limited the relevant period for redetermination to between initial application and approval, runs contrary to *Loper Bright*'s directive that the Court "exercise its independent judgment in deciding whether an agency has acted within its statutory authority[.]" *Loper Bright*, 144 S. Ct. at 2273.  Perkins would have the Court adopt a "general" reading of § 405(u), allowing the Commissioner on redetermination to consider current impairments up to the

redetermination decision date.  *See* DE 23 at 4–5.  Here, that would include the period between Perkins's initial application in 2005 and the ALJ's redetermination decision in 2023.

Perkins's argument first fails because the Court did not defer to SSR 22-1p.  Rather, in affirming the Commissioner's relevant period determination, the Court addressed § 405(u) on its face, untethered from SSR 22-1p's treatment.  It noted that a redetermination hearing "is not an initial decision or determination; rather it is a second consideration of an original determination suspected to be tainted." *See Perkins*, 739 F. Supp. 3d at 555.  That's why, as the Court explained, "[i]t would be illogical to think that, under the text—which hinges on the merits of the original application, per § 405(u)—the redetermination would include assessment of records with no linkage to the conditions at issue in the original period." *Id.*  So, SSR 22-1p, "rationally draws the decisional line at the original application period." *Id.*  True, the Court did cite, far earlier in the opinion, *Merz v. Secretary of HHS*, 969 F.2d 201, 203 (6th Cir. 1992), for the proposition that an agency's construction should be followed absent "compelling indications it is wrong."  But the substance of the Court's analysis signals independent textual judgment and analysis, not the rote deference *Loper Bright* derides.

Indeed, it would have been improper for the Court to invoke *Chevron* in this context, even before *Loper Bright*, because the Supreme Court has long held that informal interpretations like SSR 22-1p must be resolved under *Skidmore*. *See Christensen v. Harris Cnty.*, 120 S. Ct. 1655, 1662–63 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.").  SSR 22-1p did not survive the rigors of notice-and-comment rulemaking, and so must be assessed in line with "all those factors which give it the power to persuade, if lacking the power to control." *Skidmore v. Swift & Co.*, 65 S. Ct. 161, 164

(1944). The Court did just that, taking the statute's text and finding that it rationally squared with SSR 22-1p. Deference may have been error, but the Court didn't defer.

To put a finer point on it, though, traditional tools of statutory interpretation support SSR 22-1p. Start with the text. § 405(u) directs the Commissioner to "immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits . . . ." The prefix "re-" indicates a backward facing inquiry, focusing on the original determination. *See Re*, *Webster's Third New International Dictionary* 1888 (1981) (defining "re" as "again, anew, over again"). The Commissioner is to "redetermine" the claimant's entitlement to benefits, not determine such entitlement in the first instance. Indeed, § 405(u) expressly distinguishes between an initial determination and redetermination. *See* § 405(u)(1)(B). So, if the Commissioner is to "redetermine" benefits, as opposed to reaching an initial determination, then the only formative evidence is that which bears on the entitlement to the benefit originally at issue. Anything else would simply be an initial determination—something the statute expressly views as a separate and independent process. The Court recognized this thread originally, and it holds true just the same now. *See Perkins*, 739 F. Supp. 3d at 555 (E.D. Ky. 2024) ("It would be illogical to think that, under the text—which hinges on the merits of the original application, per § 405(u)—the redetermination would include assessment of records with no linkage to the conditions at issue in the original period."). Redetermination calls for a fresh start to the original process, absent the evidence tainted by fraud. That is temporally linked, necessarily, to the benefit period at issue in the initial determination.[1]

---

[1] Perkins's vehicle for relief here—reconsideration—demonstrates this principle. Perkins doesn't ask the Court to begin a separate case. Rather, he asks it to omit the aspects of the original analysis that were supposedly in error and assess whether relief should have been granted absent those problematic aspects.

6

While Perkins presents his reading as the "best," his sought interpretation leads to troublesome results—a clear indicator that a better reading exists. *See Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 402 (6th Cir. 2008) ("Established principles of statutory interpretation caution against interpretations that lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress."). Perkins's "general" reading of § 405(u) would allow a claimant facing redetermination to date impairments arising after the initial disability determination back to the original application date for purposes of benefit entitlement. To demonstrate, if a claimant was not initially disabled between the period of application and favorable decision, but later developed an impairment that qualified them as disabled, the claimant, under Perkins's reading, could use the later impairment to prove disability at redetermination and thereby receive benefits dating back to the original application. This could include the period between initial application and impairment onset, regardless of whether the claimant would have otherwise qualified as disabled during that period. Indeed, that's just the result Perkins seeks here—to use his anxiety as a means to prove disability dating back to 2005, despite first receiving treatment for the issue only *after* the Commissioner decided his claim initially. In a system that places a premium on regularity and process in the initial determination, this approach—which would at best discount, and at worst, nullify, the initial determination in this setting—cannot be.

Perkins finally argues that SSR 22-1p conflicts with 20 C.F.R. § 404.970(a)(5)'s directive that the relevant period extends to the date of the hearing decision. *See* DE 23 at 4–5. Perkins selectively cites the provision. In full, it reads that the appeals council will review a case, among other reasons, if it "receives additional evidence that is new, material, and relates to the period on

---

That's not substantively different than what § 405(u) and SSR 22-1 ask the Commissioner to do, and it indicates that the analysis must be temporally linked to the original period to properly qualify as a *re*-determination.

or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." § 404.970(a)(5).  Importantly, the provision confines the appeals council's evidence consideration to "*the period on or before the date of the hearing decision*", *id.* (emphasis added), and later explains that if the claimant "submit[s] additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision[,]" the appeals council will disregard the additional evidence.  § 404.970(c).  The "hearing decision" refers to an ALJ's benefit determination, which is reviewable by the appeals council.  *See* § 404.900(a)(4).  That express limitation only confirms SSR 22-1p's approach.  Just as the appeals council, on review, only considers evidence relating to the period on or before the ALJ's hearing decision (the only evidence bearing on the initial determination), a § 405(u) redetermination under SSR 22-1p employs the same logical constraints.  The result is natural: both proceedings address entitlement to benefits between the date of original application and initial benefit determination.  Perkins's reading would only add contradiction into the mix.

While SSR 22-1p has not survived the scrutiny of the notice and comment process, and thus "lack[s] the force of law," the opinion is still entitled "respect" and may still have the power to persuade the Court, though not to bind it.  *See Christensen*, 120 S. Ct. at 1662–63 (2000) (citing *Skidmore*, 65 S. Ct. at 164).  "No doubt, the SSA has endeavored to interpret and apply the redetermination statute reasonably." *Hicks v. Colvin*, 214 F. Supp. 3d 627, 639 (E.D. Ky. 2016), *aff'd sub nom. Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786 (6th Cir. 2018).  The Court agrees with respect to this issue.  § 405(u) textually and logically supports SSR 22-1p's relevant period limitations.  And in this reconsideration posture, nothing in the Court's original treatment amounts to an error "so egregious that an appellate court could not affirm the district court's judgment." *Combs*, 2012 WL 4460745, at *1.  The Court stays the course.

### b. Consideration of 2016 Treatment Records

Perkins next argues that the ALJ—and by extension, the Court—erred in failing to consider his 2016 treatment records for anxiety. *See* DE 23 at 6–9. Perkins provides evidence that he submitted 451 pages of documents from the Pikeville Medical Center from 1999–2019, among them, 2016 records documenting anxiety treatment. *See id.* at 6–7. The ALJ's redetermination opinion found that the records were "unexhibited" between 2015 and 2023, but nonetheless, that they did not "relate to the period at issue" and so did not "affect the decision about whether the beneficiary/recipient was disabled during the period of the prior allowance." *See* R. at 427.

Perkins's failure on his first ground for reconsideration dooms this one as well. Indeed, he expressly recognizes that this supposed error relies on the first: "the failure [to consider the evidence] was not Mr. Perkins's but rather is another symptom of the agency's flawed approach to the 'period at issue.'" DE 23 at 7.

The Court does agree that it seems Perkins did timely submit the records, so the Court acknowledges its prior description, which it based on the record the Commissioner filed, is mistaken about that aspect. This does not impact the result, because the ALJ dispensed with the records as not germane to the period assessed.

Perkins's problem is that the ALJ correctly defined the "relevant period" and thus, properly excluded Perkins's would-be evidence as lacking relevance to redetermination. Importantly, Perkins asserts only that the 2016 records document his treatment for anxiety. *See* DE 23 at 6–8. He does not claim that the documents related to treatment for an impairment that he listed on his 2005 application. And as the Court previously determined, "Perkins's initial disability report makes no mention of anxiety, only listing 'ringing ears' and a 'skin disorder' as the illnesses, injuries, or conditions limiting his ability to work." *Perkins*, 739 F. Supp. 3d at 555. If the records

9

at issue had anything at all to do with those conditions, the ALJ's failure to consider them may have been in error. An ALJ must still consider treatment records that post-date the relevant period during redetermination, but only if those documents have some "linkage to the conditions at issue in the original period." *Id.* Perkins—concededly—explains that the treatment records substantiated his claims of anxiety, and nothing more. *See* DE 23 at 6–8. But, given that Perkins never "support[s] that he had anxiety during the relevant period," the supposedly disregarded records were not relevant to the redetermination analysis, and the ALJ properly omitted them.

Perkins, in a last-ditch effort, asserts that the ALJ must consider "all evidence" in reaching a disability determination. *See* DE 23 at 8 (citing 20 C.F.R. § 416.920(a)(3)). That's true in a sense, but that blunt statement needs some whetting. "All evidence" refers to all evidence bearing on the issue of disability, not literally all evidence submitted as part of the record. *See Akers v. Corbin Coal Co.*, 989 F.2d 498 (Table) at *2 (6th Cir. 1993) ("[the ALJ accurately and sufficiently summarized all *relevant* medical evidence submitted by the parties.") (emphasis added); *Martin Edward M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00201-CHL, 2022 WL 4225763, at *2 (W.D. Ky. Sept. 13, 2022) ("[The] Claimant does not explain how his service-related disability award is relevant to his mental capacity to pursue his DIB claim after it was denied in April 2018 nor why it is likely to have changed the outcome of the prior disability determination."); *Coleman v. Comm'r of Soc. Sec.*, No. 12-CV-10809, 2013 WL 1316953, at *3 (E.D. Mich. Mar. 29, 2013) ("In considering medical records prior to a claimant's alleged onset date, an ALJ must consider the records to the extent they are relevant to the claim for disability benefits.") (citing *Vandenboom v. Barnhart,* 421 F.3d 754, 750 (8th Cir. 2005)).

The ALJ properly disregarded the 2016 treatment evidence because it didn't bear on the relevant period. That's in line with the cases, and it's also in line with the appeals council

regulations that call for disregarding evidence that "does not relate to the period on or before the date of the administrative law judge hearing decision" for purposes of review.  *See* 20 C.F.R. § 404.970(c).  The ALJ did not err in disregarding irrelevant evidence of Perkins's post-dated anxiety treatment, and the Court did not err in affirming that decision.

## III.      Conclusion

Perkins's clear error arguments all fall short.  The Court **DENIES** DE 23.

This the 22nd day of April, 2026.

Signed By:

*Robert E. Wier*

**United States District Judge**